The case for oral argument this morning will be United States v. Carson, and we'll hear first from Mr. Cronin. Thank you, Judge Wood. May it please the Court, my name is Dan Cronin, and I represented the appellant, Wallace Carson, below, and here today, I'm asking for his plea conviction and sentence to be vacated on the basis that his sentence under the Armed Career Criminal Act to being a felon in possession of a firearm was illegal. The reason for that claim is that the predicate offenses of armed robbery under Illinois law, two prior convictions for simple robbery under Illinois law, and a Missouri conviction for So of course, there are two things I would like you to address as you're discussing this. One of them is the fact that the Curtis Johnson case was already long since on the books by the time Mr. Carson pleaded guilty to the charges and entered into his plea agreement, and secondly, of course, is the fact that the plea agreement includes an appeal waiver. Yes, Judge Wood, and as the Court's aware, I actually have the unpleasant admission of having taken inconsistent positions on the appeal waiver. In fact, as late as the government's filing before this Court of a motion to dismiss based on untimeliness and on the appeal waiver, I conceded that the appeal waiver, in my view at that time, precluded the appeal here today. Since that time, I've come to believe that the sentence was an illegal sentence, that the Armed Career Criminal Act was improperly applied to Mr. Carson, and I'm relying, of course, on that exception implicit to appeal waivers allowing for appeals of illegal sentences. But I don't see what's illegal about this sentence. It's a question of judgment. One has to construe statutes to see which particular predicate offenses do or do not qualify under the Armed Career Criminal Act, so it strikes me as it's simply a legal argument that he voluntarily chose to give up when he signed the plea agreement. And, Your Honor, certainly at the time that he entered into the plea agreement, and this is going back to your question from a moment ago as well, the Curtis Johnson case had been decided years before, and as counsel for the government has pointed out in the government's briefing, there are several opinions from this Court regarding Illinois robbery as falling within the gambit of the Armed Career Criminal Act. I believe that what happened here, Your Honor, was a forfeiture rather than a waiver. I don't believe that Mr. Carson or I knowingly relinquished a right. I think, frankly, my inconsistent position on the appeal waiver as well as the underlying merits shows that there was no intentional relinquishment. Frankly, I believe that my error was, while I was cognizant of this Court's precedent, which obviously controls, had I had to do it over again, I would have paid more attention to some of the Illinois decisions, which I think our arguments today hinge upon, especially the U.S. v. Taylor decision from the Illinois Supreme Court in 1989. So what do you do with the observation in United States v. Worthen that makes the point that, you know, if you actually have to go all the way in and decide the merits of the issue, in this instance, whether these are qualifying prior convictions, what's the point of appeal waivers? I believe there are two reasons, Judge Wood, why the present case is less like the Worthen decision and more like the Gibson decision from some years earlier. First, as in the Gibson case, we're not asking this Court to invalidate a federal conviction. We're asking the Court to decide what we believe is a purely legal argument, which was the stance in Gibson. Secondly, I'm very cognizant of the warnings in Worthen that giving the appellant what he or she is asking for may open a Pandora's box. But here, too, we believe the present case is distinguishable for two reasons. In the Worthen decision, this Court emphasized how the government in that case had dropped some charges. That did not happen here. Also, the Worthen panel noted that, in that case, the government also, as part of the bargain, agreed not to seek the death penalty. There was no such bargain here, and, in fact, our position is that Mr. Carson was ultimately sentenced on count three, the felon in possession count, above what would have properly been the statutory maximum. Okay, thank you. Thank you. Mr. Kutchin. Good morning, Your Honors. My name is Jim Kutchin. I'm here on behalf of the government. The government obviously agrees with what the Court has said regarding the waiver in this case. I don't think that there's any meaningful distinction between what occurred in this case or the underlying situation in this case and what was in Worthen versus United States. Of course, the sentence would have been considerably lower. The whole baseline would have been lower had this not been under the Armed Career Criminal Act. It would have been somewhat lower. I don't know that it would have been considerably lower. I guess that's a matter of how you would interpret that. I think, if I recall correctly, under count one, he would have had an offense level of 24, but the Court certainly could have fashioned a sentence to achieve the sentence that it did in this case. Even with the grouping rules and all these other things? Because you've argued that the concurrent sentence doctrine applies, but I just don't see that given the fact that the guidelines range would have been different. We know from cases like Pew that that's a critical anchor point. I do, Your Honor, and obviously the concurrent sentence doctrine is discretionary. What makes this a little bit different is that, again, the defendant is not contesting his conviction on count three. He's contesting only the sentence, and he made no argument regarding the sentence that was imposed in count one in his opening brief. I think he's waived any argument that he would be entitled or the Court should consider what the effect on the sentence in count one. But, again, the government recognizes the concurrent sentence doctrine is a discretionary matter for the Court. But there are so many hurdles that Carson has to get over before the Court could ever reach the merits in this case, Your Honor. First is the appeal waiver that the Court has addressed, and, again, I don't see any meaningful distinction between Worthen in this case. In Worthen, the defendant was contesting making the purely legal argument that his underlying conviction could not support a 924C conviction and, therefore, the 50-year sentence that was imposed on that count. That's the same type of argument that we're facing here. As the Court noted, the rule that Carson wants the Court to adopt here is that you have to decide the merits of the case before you ever get to determine whether the appeal waiver is enforceable. In addition to that waiver and the concurrent sentence doctrine, then you have the fact that the defendant knowingly and intentionally failed to raise this in the district court. And Mr. Cronin, I think, confused a little bit of this forfeiture versus waiver. That really doesn't have anything to do with the plea agreement. That has to do with the straight waiver argument that he, I think, as we set forth in the brief, he decided to object to certain things in the PSR and other things that he didn't. This Court has recognized in the United States v. Brody that that is the paragon of intentional relinquishment. A paradigm, maybe, not paragon. He emphasizes now, though, very much that had what he regards as the error, obviously, no one has decided that yet, but if we assume it is an error, would cause the sentence to go above the statutory maximum. So we're not just talking about points on a guideline scale. We're talking about statutory limits. Well, that's true, Your Honor. But defendants knowingly and intentionally waive all kinds of constitutional arguments that they might otherwise present. I don't think that that's determinative in this case, especially as the Court pointed out earlier, that this is not something that can be clearly determined without, as the case was in Gibson, getting back to the appeal waiver where all you had to do was look at the sentence imposed versus what the statute allowed for. And it was so far higher. I mean, the parties here decided what they believed, the statutory range as well as the guideline sentence, and they knowingly entered into an agreement that reflected that. And again, the defendant received valuable consideration for that. It's clear when you read through the plea agreement that the defendant's decision to plead guilty and waive his rights was tied to the government's low-end recommendation. When you look at the defendant's record, that was a valuable thing to him in this case. What if this had been the only count in the case, and the defendant had stipulated that these were predicate offenses, but under the Curtis Johnson case, what I sometimes think of as Johnson 2010, they fail. I mean, it's somebody who poked you or some offensive touching that doesn't meet the Curtis Johnson standards. If it's the only count and the sentence winds up being above the statutory maximum, don't we have a problem with the legality of the sentence beyond agreements? Well, again, Your Honor, I think that might impact the concurrent sentence doctrine analysis, but I'm not sure that it would. Well, I told you already that I didn't like that anyway because of the grouping, so let's not worry about that. I understand, Your Honor, but I don't think that that changes the argument here. Again, this is not a case where, if you're referring back to the appeal waiver, that's still a situation where the court would have to determine the legality, the merits of the argument that the defendant's presenting, rather than, as the case in Gibson, just simply looking at the case, its sentence was imposed on what the statute under any construction could have ever, he could have ever been sentenced to. Here, there's a legal argument about whether robbery is a crime of violence or not. The defendant chose not to make, and he received valuable consideration for not making that argument. Again, there's the plea agreement as well as the waiver versus forfeiture argument under the plain air review. We don't believe that he even gets to the plain air review. However, if the court were to get to the plain air review to find forfeiture rather than waiver under these circumstances, I don't think under any construction we could say that this air, if there was one, was plain, and I think the court's recent decision, United States versus Curitin, makes that very clear that if it's debatable, it's not plain air, and at best you could say the government doesn't concede that the argument is even debatable, but at best that's what you could construe this as, and it certainly doesn't amount to plain air. It's not, and we believe robbery is a crime of violence for all the reasons set forth in our brief. All right. Thank you. Thank you very much. Anything further, Mr. Cronin? Thank you, Judge Wood. I'd like to just briefly if I may clarify the difference under the grouping rules had Appellant Carson not been sentenced under the Armed Career Criminal Act. The operation of the guidelines of applying the Armed Career Criminal Act to Count 1 as well as Count 3 resulted in a total offense level 10 levels higher and a criminal history category 2 categories higher than he otherwise would have had. Counsel for the government is correct in referring to offense level 24. From the pre-sentence investigation report, it's clear that would have been the total offense level on both Count 1 and Count 3 prior to any reduction for acceptance of responsibility. If he had received the same three levels for acceptance of responsibility, Appellant Carson's recommended range would have been 57 to 71 months instead of the 188 to 235 months. In other words, less than a third of what the range was. All right. Thank you very much for that clarification. Thanks to both counsel.  Thank you.